# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| JONATHAN GRAMM | CIVIL ACTION NO. 24-1187 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| FIRE DISTRICT 9 DESOTO PARISH, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss for Failure to State a Claim filed by Defendants Fire District 9 DeSoto Parish ("DFD 9") and Fire Chief Kristopher King ("King") (collectively, "Defendants"). See Record Document 11. Plaintiff Jonathan Gramm ("Gramm") opposed. See Record Document 15. Defendants replied. See Record Document 16. For the reasons set forth below, Defendants' Motion (Record Document 11) is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Gramm filed his Complaint against DFD 9 and King, individually and in his capacity as the Fire Chief for DFD 9, seeking relief for the alleged hostility and retaliation he was subjected to and the deprivation of his rights under the United States Constitution and Louisiana Revised Statutes § 23:822. See Record Document 1 at 1. DFD 9 is one of six Fire Protection Districts (the "District") in DeSoto Parish, Louisiana. See id. at ¶ 8. The District is administered by a municipal Board of Commissioners (the "Board") and the Fire Chief. See id. at ¶ 9. The Board develops and approves the annual budget and establishes the tax rate for the District. See id. at ¶ 10. The Board is also responsible for hiring the Fire Chief. See id.

The Fire Chief is responsible for managing the day-to-day operations for the District, which includes deciding to hire and fire personnel, suspensions, creating and enforcing workplace rules for employees, and anything else which might impact the terms and conditions of a firefighter's employment, as well as fire protection and public safety operations. See id. at ¶ 11. At all relevant times, the District assigned King to have final policymaking authority and enforcement of nearly all rules and regulations effecting terms and conditions of employment, as well as disciplinary matters and the District's fire protection and public safety operations. See id. at ¶ 14.

Gramm began working for DFD 9 in September 2014 as a full-time firefighter with the rank of Captain. See id. at ¶ 15. In July 2017, Gramm helped organize IAFF Local 5138 ("Local 5138" or the "union") and was subsequently elected Secretary-Treasurer of Local 5138 that month. See id. at ¶ 17. During his time as Secretary-Treasurer, from July 2017 though November 2023, he advocated on various matters of public concern which were affecting the District's firefighters. See id.

On September 18, 2023, Gramm, along with other firefighters employed by the District, learned that the upcoming Board meeting's agenda included an item to approve public funds to be spent on a new vehicle for the Fire Chief. See id. at ¶ 18. Local 5138 members met to formulate a response to voice the firefighters' concern for public funds being spent on a new vehicle rather than being spent to improve the poor working conditions and equipment at DFD 9. See id. at ¶ 19. The firefighters decided that Gramm, as their union representative, would contact members of the Board to petition the use of the District's resources appropriately towards the improvements for equipment and fire stations. See id.

On September 18, 2023, Gramm, while off duty, telephoned Commissioners Ross Tilbury and Bobby Ettredge (collectively, "the Commissioners") to petition them to redress the firefighters' concerns about the District and the expenditure of public funds. See id. at ¶ 20. Upon arriving at work the next day, King called Gramm into his office and handed him a notice of formal investigation for an "incident involving him on or around September 18, 2023." See id. at ¶ 21. Gramm asserts this "incident" involved a protected constitutional activity he engaged in as a union officer and private citizen. See id. After this meeting, he was sent home and placed on administrative leave. See id. While on administrative leave, Gramm was subjected to an investigation allegedly spearheaded by King that lacked due process. See id. at ¶ 22.

On November 27, 2023, Defendants terminated Gramm's employment. See id. at ¶ 23. He was provided with an official Notice of Disciplinary Action (the "Notice"). See id.; see also Exhibit 1. According to the Notice, he was discharged under particular official policies of the District. See Record Document 1 at ¶ 24; see also Exhibit 1. In the Notice, Gramm claims that Defendants explicitly acknowledge that he was terminated for petitioning his government officials to redress grievances in his capacity as a union officer while off-duty and for speaking to them as a private citizen about matters of public concern. See Record Document 1 at ¶ 25.

As a result of Gramm's termination, he contends he has suffered lost wages and benefits, mental and emotional harm, damage to his personal and professional reputations, and other injuries. See id. at ¶ 26. Gramm asserts the following four counts against Defendants: (1) 42 U.S.C. § 1983 Violation of Right to Free Speech Pursuant to the First and Fourteenth Amendments; (2) 42 U.S.C. § 1983 Violation of Right to Freedom

of Association Pursuant to the First and Fourteenth Amendments; (3) 42 U.S.C. § 1983 Retaliation in Violation of Right to Petition Pursuant to the First and Fourteenth Amendments; and (4) La. R.S. § 23:822 Retaliation in Violation of State Public Policy to Permit Persons to Form, Join, and Assist Labor Organizations. See id. at ¶¶ 29–70.

**LAW AND ANALYSIS**

**I. Dismissal Standards.**

"Under Federal Rule of Civil Procedure 12(b)(1), a claim is '"properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim.'" Turner v. Scott, No. 18-00998, 2019 WL 3771751, at *1 (M.D. La. Aug. 9, 2019) (quoting In re FEMA Trailer Formaldehyde Prods. Liab. Litig., 668 F. 3d 281, 286 (5th Cir. 2012) (quoting Home Builders Ass'n v. City of Madison, 143 F. 3d 1006, 1010 (5th Cir. 1998))). Furthermore, "[a] motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)." Id. (citing Benton v. U.S., 960 F. 2d 19, 21 (5th Cir. 1992)). The party asserting jurisdiction has the burden of proof under Rule 12(b)(1). Wells v. Dep't of Children and Family Servs., No. 23-354, 2024 WL 3319925, at *2 (M.D. La. Jan. 24, 2024). See Celestine v. TransWood. Inc., 467 Fed. Appx. 317, 318 (5th Cir. 2012).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos Cnty., Tex., 981 F. 2d 237, 243 (5th Cir. 1993). Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S.

4

at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standards to survive such a motion. See id. at 678–79, 1949–50. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

**II. Summary of the Arguments.**

Defendants argue Gramm's Complaint should be dismissed because he cannot state a cognizable claim. See Record Document 11-1 at 6. Defendants assert that his free speech retaliation claims should be dismissed because it is well established that the First Amendment does not protect speech made in furtherance of a public employee's official duties, regardless of whether that speech addresses a matter of public concern. See id. They contend his Complaint is replete with allegations that affirmatively establish his alleged speech was made in the ordinary scope of acting as the union representative of Local 518 and therefore cannot serve as the foundation of a free speech claim. See id. Defendants aver that Gramm's Fourteenth Amendment claims fail because he was an at-will employee of DFD 9, and no contract, statute, or other state law entitlement exists to alter his at-will relationship with DFD 9. See id. Additionally, they advance that he cannot articulate a colorable due process claim because, as an at-will employee, he has not alleged any vested liberty or property interest under state law. See id.

Gramm opposes, asserting that his Complaint alleges facts showing that he engaged in protected speech. See Record Document 15 at 10. He argues Defendants improperly conflate his official job duties as a firefighter, which he performs pursuant to

his employment with the District, with his responsibilities as a union officer, which he performs on his personal time. See id. at 11. Gramm submits that he acted as a private citizen when he spoke to the Commissioners as a union officer about the Board's use of public money and DFD 9's ability to serve the public. See id. at 12.

Furthermore, Gramm contends that there is no dispute that he spoke about matters of public concern when he called the Commissioners. See id. Thus, he submits this is quintessential First Amendment activity, and the Court should reject Defendants' arguments. See id. at 13. Even if the Court credits Defendants' position and finds that aspects of Gramm's speech were private rather than public speech, Gramm avers that the Court should not dismiss his free speech claim, but instead, find that his conversations with the Commissioners constitutes mixed speech that is protected by the First Amendment. See id. at 15.

Gramm also advances that his Complaint alleges that he engaged in union activities that are protected by the Free Association Clause and Louisiana state law. See id. at 16. He argues it is unlawful for public employers, including the District, to retaliate against employees that engage in concerted union activities or advocate and petition the government on their behalf of a union under both the United States Constitution and Louisiana law. See id. at 17. He asserts that his Complaint sufficiently alleges that he was fired because he called his local government officials at the behest of union members to raise their collective concerns about the budget and the District's ability to perform its public safety functions. See id. at 19.

Defendants reply, averring that Gramm's Complaint demonstrates that he was not acting in the public interest but was solely motivated by an outcome that would personally

6

benefit him. See Record Document 16 at 3. Defendants state that Gramm did not contact the Commissioners at their offices; did not voice his complaints at a public meeting; did not voice his complaints to his supervisor; did not voice his complaints to the public; and did not voice his complaints to anyone outside of the fire department. See id. They contend that Gramm's argument stating he was performing a public service, "completely out of the eyes of the public, and while requesting alternative uses of the [DFD] 9's funds that directly benefit him personally is laughable." See id. Defendants submit that he ignored DFD 9's process for making complaints, obtained the Commissioners personal cell phone numbers, and acted in his own best interests. See id.

**III. Analysis.**[1]

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

---

[1] The Court notes that Defendants' Motion provides the standard of review under Rule 12(b)(1). See Record Document 11-1 at 9. It is unclear whether Defendants are attempting to also move for a dismissal under Rule 12(b)(1), but they provide no sufficient argument for why this Court lacks subject matter jurisdiction. The Court should consider a Rule 12(b)(1) motion before addressing a Rule 12(b)(6) motion. See Wilkerson v. Univ. of North Tex., 223 F. Supp. 3d 592, 601 (E.D. Tex. 2016). The Court finds that there is no sufficient evidence to strip this Court of subject matter jurisdiction. Subject matter jurisdiction exists, and any motion to dismiss under Rule 12(b)(1) is **DENIED**.

7

Ramirez v. Rendon, No. B-14-179, 2015 WL 10437815, at *5 (S.D. Tex. Dec. 7, 2015) (quoting 42 U.S.C. § 1983)). Section 1983 is "'a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.'" Id. "To prevail upon a § 1983 claim[,] a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation." Id. The Court will now discuss each of Gramm's claims in turn.

    (a) Counts I & III – § 1983 Violation of Rights to Free Speech and to Petition Pursuant to the First and Fourteenth Amendments.

"Claims brought under the First Amendment's free speech and petition clause are analyzed in the same way." Lubbe v. Milanovich, No. 18-1011, 2020 WL 5260545, at *5 (W.D. Tex. June 8, 2020) (citing Gibson v. Kilpatrick, 838 F. 3d 476, 481 (5th Cir. 2016)). To succeed on his claims under Counts I and III, Gramm must demonstrate that "'(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public service; and (4) the speech precipitated the adverse employment action.'" Dumas v. St. Tammany Parish Fire Dist. No. 3, No. 17-1025, at *5 (E.D. La. May 12, 2017). "Whether speech addresses a matter of public concern is a question of law to be resolved by the court." Id.

Defendants' argument that Gramm's speech violated DFD 9's policy is irrelevant "'to whether the subject matter of the speech is on a matter of public concern.'" Moreau v. St. Landry Parish Fire Dist. No. 3, 413 F. Supp. 3d 550, 561 (W.D. La. Sept. 10, 2019) (quoting Salge v. Edna Indep. Sch. Dist., 411 F. 3d 178, 185 (5th Cir. 2005)). The question

8

of whether Gramm's speech addresses a matter of public concern "'must be determined by the content, form, and context of a given statement….'" Id. At the pleading stage, the question before the Court is whether Gramm sufficiently pled the elements required for his claims under Counts I and III.

The first element, which requires an adverse employment action, has been sufficiently pled by Gramm is his Complaint and is supported by the attached Notice. See Record Document 1; see also Exhibit 1. With respect to the second and third elements, the issue of whether Gramm's speech was that of a citizen on a matter of public concern is "most commonly addressed at summary judgment when the Court has the benefit of a fully developed record." Lubbe v. Milanovich, No. 18-1011, 2020 WL 5260545, at *6 (W.D. Tex. June 8, 2020). Gramm claims that he called the Commissioners while he was off duty in an effort "to petition them, as his government officials to redress his and [the other] firefighters' concerns about the District and the expenditure of public funds." See Record Document 1 at § 20. He asserts that his speech dealt with the safety of the firefighters and the community of DeSoto Parish. See id. Gramm provides the Court with specific factual allegations as to what was said during this phone call, and the Court must accept these allegations as true at the pleading stage. See Lubbe, 2020 WL 5260545, at *6.

Furthermore, the Fifth Circuit has held that "speech on matters of public concern need not be made before a public audience." Moreau, 413 F. Supp. 3d at 561. Thus, Defendants' argument that Gramm's speech was not made in front of a public audience is irrelevant for determining whether his speech is protected. At the pleading stage, his Complaint contains sufficient factual allegations that support the second and third elements of his claims under Counts I and III.

As to the fourth and final element, Gramm's phone call to the Commissioners occurred on September 18, 2023, and he received the Notice on November 27, 2023. See Exhibit 1. Thus, there is sufficient evidence to demonstrate that the speech at issue predated the adverse employment action. In fact, the Notice from King specifically addressed Gramm's phone call with the Commissioners. See id. King wrote that Gramm "acted in an unbecoming, discourteous, deliberate, and unprovoked manner when [he] bypassed [his] immediate supervisor, defamed [King] and made false statements and accusations of the misuse of departmental funds and a lack of appropriated equipment…." See id. at 2. Thus, Gramm has plausibly alleged that his speech resulted in his termination.

Accordingly, the Court finds that Gramm has sufficiently pled a plausible claim for relief as to Counts I and III. He alleges that he engaged in an external communication when he complained to the Commissioners over the phone regarding the distribution of public funds. This communication can support a claim for free speech retaliation, as it was made outside of Gramm's duty as a firefighter captain and addressed an issue that could qualify as a matter for public concern. Therefore, Defendants' Motion with respect to Counts I and III is **DENIED**. Gramm's claims under § 1983 for a violation of his rights to free speech and to petition pursuant to the First and Fourteenth Amendments remain.

(b) Count II – § 1983 Violation of Right to Freedom of Association Pursuant to the First and Fourteenth Amendments.

"The freedom of association guaranteed by the First Amendment 'encompasses the right of public employees to join unions.'" Lindberg v. Bossier Parish, La., No. 07-00641, 2008 WL 4491642, at *3 (W.D. La. Oct. 2, 2008). "This right 'is violated by state

actors whose purpose is either to intimidate public employees from joining a union or from taking an active party in its affairs or to retaliate against those who do.'" Id. "[A] First Amendment association retaliation claim requires [Gramm] to show: (1) that he suffered an adverse employment action; (2) that his interest in associating outweighed Defendants' interest in efficiency; and (3) that his association with the union was a substantial or motivating favor in the adverse employment action." United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Industrial and Serv. Workers Int'l Union v. Anderson, 462 F. Supp. 3d 676, 693 (W.D. Tex. 2020).

As stated above, Gramm has sufficiently pled that he has suffered an adverse employment action, which is evidenced by the attached Notice. See Record Document 1; see also Exhibit 1. However, he has failed to sufficiently allege elements two and three. In his Complaint, he admits that DFD 9 knew of his involvement and membership in Local 5138. See Record Document 1 at ¶ 43. Gramm's involvement with Local 5138 began as early as July 2017, while he was employed by DFD 9. See id. at ¶¶ 15, 17. Additionally, a review of the Notice supports a finding that Defendants terminated Gramm because of his speech, not his association with Local 5138. The Court finds that Gramm has failed to plausibly allege that his association with Local 5138 was a substantial or motivating favor in his termination. He was a member long before his termination, and he has failed to sufficiently demonstrate that Defendants retaliated against him because of his association with Local 5138.

Gramm's allegations under Count II are replete with conclusory language that is either insufficient for pleading purposes or better supports his claims under Counts I and III. For example, he asserts that Defendants "discriminated against, disciplined, and

11

discharged Gramm because of his associational activity as a union officer on September 18, 2023, when he advocated to [the Commissioners]" is conclusory and speculative. See Record Document 1 at ¶ 45. Additionally, he advances that Defendants' conduct "unlawfully chills the free association with IAFF Local 5138, among other organizations, and intimidates other District employees and members of the DeSoto Parish community from similarly associating with or participating in IAFF Local 5138." See id. at ¶ 46. He continues and claims that Defendants' conduct "was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would have known." See id. at ¶ 48. His allegations are legal conclusions that call for speculation, which is insufficient at this stage of the proceeding.

Therefore, Defendants' Motion to Dismiss (Record Document 11) is **GRANTED** with respect to Count II. Gramm's claim under § 1983 for a violation of his right to freedom of association pursuant to the First and Fourteenth Amendments is **DISMISSED WITH PREJUDICE**.

(c) Count IV – La. R.S. § 23:822 Retaliation in Violation of State Public Policy to Permit Persons to Form, Join, and Assist Labor Organizations.

Louisiana Revised Statutes § 23:822 provides the following public policy:

> Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employee. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore, it is necessary that the individual workman have

12

> full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

LA. REV. STAT. § 23:822. Under Count IV of his Complaint, Gramm alleges that Defendants retaliated against him in violation of his rights "safeguarded under Louisiana state law." See Record Document 1 at ¶ 68. He claims that "[t]he grounds and reasons offered by Defendants for the adverse actions against [him] are false and pretextual." See id. Additionally, he asserts that Defendants' action "were done in a knowing, willful, and reckless manner and in bad faith, and violate clearly established statutory rights of which a reasonable person in the place of the Defendants would have known." See id. at ¶ 69. Gramm only seeks declaratory and injunctive relief under Count IV. See id. at ¶ 70.

The Court finds Gramm's allegations to be conclusory and lacking any factual support. La. R.S. § 23:822 "merely declares that it is against public policy to restrict labor and union activity and allows a court to enjoin unlawful activity." Lindberg v. Bossier Parish, La., No. 07-00641, 2008 WL 4491642, at *7 (W.D. La. Oct. 2, 2008). Gramm has failed to sufficiently and plausibly allege that Defendants retaliated against him for his association and involvement with Local 5138. The disciplinary action at issue here mainly involved Gramm's speech, not his association with the union. Merely stating that Defendants retaliated against him and violated his "clearly established statutory rights" is insufficient at the pleading stage. Count IV of Gramm's Complaint is replete with legal conclusions and unsupported allegations. Therefore, Defendants' Motion (Record

Document 11) is **GRANTED** as to Count IV. Gramm's claim under La. R.S. § 23:822 for retaliation in violation of state public policy is **DISMISSED WITH PREJUDICE**.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Record Document 11) is **GRANTED IN PART AND DENIED IN PART**.

The Motion is **GRANTED** with respect to Counts II and IV. Gramm's claim listed in Count II under § 1983 for a violation of his right to freedom of association pursuant to the First and Fourteenth Amendments is **DISMISSED WITH PREJUDICE**. His claim listed in Count IV under La. R.S. § 23:822 for retaliation in violation of state public policy is **DISMISSED WITH PREJUDICE**.

The Motion is **DENIED** with respect to Counts I and III. Gramm's claim listed in Count I under § 1983 for a violation of his right to free speech pursuant to the First and Fourteenth Amendments remains. His claim listed in Count III under § 1983 for a violation of his right to petition pursuant to the First and Fourteenth Amendments remains.

An Order consistent with this Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 12th day of June, 2025.

_____
UNITED STATES DISTRICT COURT JUDGE