**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

JONATHAN GRAMM                                    CIVIL ACTION NO. 24-1187

VERSUS                                            JUDGE S. MAURICE HICKS, JR.

DESOTO PARISH FIRE                                MAGISTRATE JUDGE HORNSBY
DISTRICT 9, ET AL.

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 31) filed by Defendants, DeSoto Parish Fire District No. 9 ("DFD9") and Fire Chief Kristopher King ("Chief King") (collectively, "Defendants"). Plaintiff, Jonathan Gramm ("Gramm"), filed an opposition (Record Document 39), and Defendants filed a reply (Record Document 40). For the reasons stated herein, the Motion is **DENIED**.

**FACTUAL BACKGROUND**

Gramm was employed by DFD9 as a Fire Captain and also served as secretary-treasurer for Local 5138 (the "union"). See Record Document 17 at 2-3. In September 2023, an agenda for an upcoming Board of Commissioners meeting was posted at the fire station and included an item concerning the proposed purchase of a vehicle for Chief King. Thereafter, firefighters discussed the proposed purchase during working hours at the station and expressed concerns regarding the allocation of district funds. Gramm contends that the firefighters believed available funds would be better spent on firefighting equipment and improvements to station conditions. See id. at 2. Because the firefighters were unable to attend the Board of Commissioner's meeting, they allegedly elected Gramm to contact the Commissioners directly because he was the union secretary-treasurer. See Record Document 39 at 7.

On September 18, 2023, while off duty, Gramm telephoned Commissioners Ross Tilbury and Bobby Ettredge regarding the concerns. See Record Document 17 at 3. It is undisputed that Gramm contacted the Commissioners without first discussing the matter with Chief King. It is likewise undisputed that Memorandum 18001 prohibited DFD9 personnel from contacting Board members regarding official district business without first conferring with their immediate supervisor. See Record Document 31-2 at 185. Gramm acknowledges that he reviewed Memorandum 18001 when it was issued and understood that if he failed to comply with its directives, it would be considered insubordination. See Record Document 39 at 12.

The following day, Gramm was provided a notice of formal investigation concerning the September 18, 2023, incident and was placed on administrative leave pending investigation. See Record Document 39-5. Following the investigation and pre-disciplinary proceedings, Defendants terminated Gramm's employment on November 27, 2023. See Record Document 39-7. The Notice of Disciplinary Action stated, in part, that Gramm "bypassed [his] immediate supervisor," made "false statements and accusations of the misuse of departmental funds and a lack of appropriated equipment …." Record Document 39-7 at 2.

The parties dispute whether Gramm was acting as a private citizen and union representative or pursuant to his official duties as a Fire Captain when he contacted the Commissioners. Gramm contends that he contacted the Commissioners while off duty as a union representative regarding matters of public concern involving public expenditures, firefighter safety, and department equipment. See Record Document 39 at 5. Defendants contend that Gramm's communications were made pursuant to his duties as a Fire

Captain because the concerns originated from subordinate firefighters and involved internal operational and budgetary issues within the department. See Record Document 31-1 at 20–22.

On August 29, 2024, Gramm filed the instant suit asserting claims under 42 U.S.C. § 1983 for violations of his rights to free speech and to petition the government under the First and Fourteenth Amendments. See Record Document 1. Claims relating to freedom of association and La. R.S. § 23:822 were previously dismissed pursuant to this Court's prior ruling on Defendants' Motion to Dismiss. See Record Document 17. Defendants now move for summary judgment on the remaining claims. See Record Document 31.

## LAW AND ANALYSIS

### I.      Applicable Standards

A court should grant a motion for summary judgment when the pleadings "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In applying this standard, the court should construe "all facts and inferences in favor of the nonmoving party." Deshotel v. Wal-Mart Louisiana, L.L.C., 850 F.3d 742, 745 (5th Cir. 2017); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995). Courts must deny the moving party's motion for summary judgment if the movant

3

fails to meet this burden. See id. If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 477 U.S. at 323). In evaluating motions for summary judgment, courts must view all facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational trier of fact to find for the non-moving party ...." Id.

## II.    Analysis

"Claims brought under the First Amendment's free speech and petition clause are analyzed in the same way." Lubbe v. Milanovich, No. 18-1011, 2020 WL 5260545, at *5 (W.D. Tex. June 8, 2020) (citing Gibson v. Kilpatrick, 838 F. 3d 476, 481 (5th Cir. 2016)). To succeed on his claims under Counts I and III, Gramm must demonstrate that "(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." Johnson v. Clarksdale Pub. Utilities Comm'n, 807 F. Supp. 3d 593, 601 (N.D. Miss. 2025).

The first element is not seriously disputed. Gramm was terminated from his employment with DFD9 on November 27, 2023. See Record Document 39-7. The Notice of Disciplinary Action expressly states that Gramm's employment was terminated following the investigation into the September 18, 2023, incident. See Record Document 39-7. Termination plainly constitutes an adverse employment action.

4

The second element is the primary issue presented by Defendants' Motion. The question for the Court is whether a genuine dispute of material fact exists as to whether Gramm spoke as a citizen on a matter of public concern or instead spoke pursuant to his official duties as a Fire Captain. See Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). When public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes. See id. at 421. However, the Supreme Court has cautioned that the inquiry is a practical one. See id. at 424. A formal job description is not dispositive, and the mere fact that speech relates to public employment or concerns information learned through public employment does not automatically remove it from constitutional protection. See Lane v. Franks, 573 U.S. 228, 236, 239–40 (2014). Rather, the critical question is whether the speech itself is ordinarily within the scope of the employee's duties. See id. at 240.

Defendants argue that Gramm was speaking as an employee because the concerns originated at the fire station, were discussed by firefighters during working hours, involved departmental equipment and budget priorities, and were allegedly matters Gramm would address as a Fire Captain. See Record Document 31-1 at 20–23. Defendants also emphasize that Gramm's deposition testimony reveals that, as a captain, he could receive and address concerns from subordinate firefighters, including concerns about department operations or allocation of resources. See Record Document 31-2 at 52. Defendants further contend that Gramm violated Memorandum 18001 by contacting Board members about official DFD9 business without first conferring with Chief King, his immediate supervisor. See Record Document 31-1 at 17.

5

Those facts are relevant, but they do not resolve the constitutional inquiry as a matter of law. The question is not simply whether Gramm's speech related to his employment or whether the subject matter touched on internal department operations. Rather, the question is whether the act of contacting members of the Board of Commissioners to urge a vote against the proposed expenditure of public funds was part of Gramm's ordinary duties as a Fire Captain. On the present record, the Court cannot conclude as a matter of law that it was.

The record reflects that Gramm's ordinary duties as a Fire Captain involved firefighting, emergency response, supervision of crew members, and addressing certain personnel or operational issues within the department. However, there is evidence that a Fire Captain's official duties did not include speaking directly to the Board of Commissioners about budget matters or advocating for or against proposed expenditures at Board meetings. See Record Document 39-11 at 18.

Defendants heavily rely on Memorandum 18001 and argue that a valid, legal basis for Gramm's termination existed because he violated the Fire District's chain-of-command policy by contacting Commissioners without first conferring with Chief King. See Record Document 31-1 at 17. The Court disagrees that the existence of such policy, standing alone, resolves the First Amendment inquiry. Whether speech violated an internal policy is not dispositive of whether the speech is protected under the First Amendment. If the speech is citizen speech on a matter of public concern, the fact that an employer has adopted a policy regulating the manner in which employees may communicate with governmental officials does not automatically remove that speech from First Amendment protection. At the summary judgment stage, the Court's task is to determine whether

6

genuine disputes of material fact remain regarding the elements of Gramm's First Amendment claims.

The Court further notes that Defendants' own characterization of Memorandum 18001 highlights the factual disputes present in this matter. Defendants suggest that Gramm could have attended the public Board meeting and raised the same concerns during the meeting itself without discipline, but that his decision to contact Commissioners beforehand over telephone rendered the speech insubordinate. See Record Document 31-1 at 4. This is a distinction without a difference.

The substance of Gramm's speech would have remained the same regardless of whether the concerns were communicated during a public Board meeting or by telephone beforehand. A reasonable factfinder could conclude that Gramm's call was simply another method of petitioning government officials about an item on a public meeting agenda when he could not attend the meeting.  Thus, the Court cannot conclude that the method by which Gramm communicated his concerns—telephone call versus in-person public comment—transformed the speech from protected citizen speech into unprotected employee speech. Additionally, the Notice of Disciplinary Action references not only the fact that Gramm contacted a Commissioner, but also the fact that his statements were defamatory, false, and accusatory. See Record Document 39-7. Therefore, these circumstances present factual and constitutional questions more appropriately reserved for trial.

The context of Gramm's speech also weighs against summary judgment. Gramm made the calls while off duty and from his personal phone. See Record Document 39-10 at 31–32. He contends that he acted as a union representative conveying concerns raised

by firefighters and union members. See id. Defendants challenge that characterization and point to evidence suggesting that the meeting at the station was not a formal union meeting and that Gramm did not identify himself as a union representative during his calls with Commissioners. See Record Document 40 at 4–5 & 8. Those arguments may bear on the weight and credibility of the evidence. However, they do not eliminate the factual dispute regarding the capacity in which Gramm spoke.

Next, the Court must determine whether the speech may have involved a matter of public concern. The speech concerned the proposed expenditure of public funds for a new vehicle for Chief King, the alleged need for firefighting and rescue equipment, and station conditions affecting the department's ability to serve the public. Public expenditures and public safety generally are considered matters of public concern. See Lane, 573 U.S. at 230 (stating that the "misuse of state funds obviously involve matters of significant public concern."). Defendants do not seriously dispute that the topic of the proposed vehicle purchase and allocation of District funds involved a matter of public concern.

Accordingly, viewing the evidence in the light most favorable to Gramm, the Court finds that genuine disputes of material fact remain as to whether Gramm spoke as a citizen on a matter of public concern. The record contains evidence from which a reasonable factfinder could conclude that Gramm contacted Commissioners as a citizen and union representative to address a public budget matter, not pursuant to his ordinary duties as a Fire Captain.

The third element requires the Court to balance Gramm's interest in the speech against Defendants' interest in the efficient provision of public services. See Johnson, 807

8

F. Supp. 3d at 601. Defendants assert an interest in maintaining discipline, preserving the chain of command, and ensuring orderly department operations. See Record Document 31-1 at 5–6, 19 Those interests are legitimate, particularly in a fire department where there is a substantial need for discipline and clear lines of authority.

However, the speech at issue involved public funds and public safety. Gramm's interest in speaking to government officials about whether taxpayer funds should be spent on a new chief's vehicle or on firefighting equipment is substantial. Moreover, the present record contains little to no evidence that Gramm's speech caused any actual disruption except for his termination and this lawsuit. See Record Document 31-2 at 91. Additionally, Defendants' own position that Gramm could have raised the same concerns at a Board meeting weakens the argument that the substance of the speech itself was inherently disruptive. Defendants primarily contend that the manner of communication—calling Commissioners before the meeting rather than appearing publicly at the meeting or first speaking with Chief King—created the discipline problem. That may be a legitimate consideration, but it does not conclusively outweigh Gramm's First Amendment interests at this stage.

The fourth element requires Gramm to show that the speech precipitated the adverse employment action. See Johnson, 807 F. Supp. 3d at 601. The Notice of Disciplinary Action directly references Gramm's communication with Commissioner Ettredge and states that Gramm bypassed his supervisor, defamed Chief King, and made false statements and accusations regarding misuse of departmental funds and lack of appropriated equipment. See Record Document 39-7. Thus, the termination paperwork itself links the adverse action to the speech at issue.

9

Defendants argue that Gramm was terminated for misconduct, including insubordination and violation of department policy, rather than for protected speech. See Record Document 31-1 at 17. However, the Notice of Disciplinary Action references the content of Gramm's speech and characterizes his statements as defamatory, false, and accusatory. See Record Document 39-7. A reasonable jury could conclude that the content of Gramm's speech substantially motivated the termination decision.

Accordingly, genuine disputes of material fact remain regarding whether Gramm spoke as a citizen on a matter of public concern, whether Defendants' asserted efficiency interests outweighed Gramm's speech interests, and whether Gramm's protected speech precipitated his termination. Thus, Defendants' Motion for Summary Judgment is **DENIED**.

### CONCLUSION

Based on the reasons explained above, Defendants' Motion for Summary Judgment (Record Document 31) is **DENIED**.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 22nd day of May, 2026.

_____
JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT